254 So.2d 1 (1971)
D.T. FARABEE, As Clerk of the Circuit Court, Lee County, Florida, Appellant,
v.
BOARD OF TRUSTEES, LEE COUNTY LAW LIBRARY, Appellee.
No. 40635.
Supreme Court of Florida.
October 28, 1971.
*2 Earl Drayton Farr, Jr., Punta Gorda, for appellant.
Julian D. Clarkson, Fort Myers, for appellee.
McCAIN, Justice.
This direct appeal involves a dispute between the Clerk of the Circuit Court of Lee County and the Lee County Law Library over the allocation of fees as between the Clerk and the Library. Our jurisdiction derives from the judgment of the Circuit Court, Lee County, holding Chapter 59-1492, Laws of Florida, constitutional. We affirm in part and reverse in part.
In 1957, Fla. Stat. § 28.241(1), F.S.A., enacted as Chapter 57-322, Laws of Florida, the general law setting filing fees to be paid to clerks of circuit courts in civil actions, was amended to provide in part:
"The party instituting any civil action, suit or proceeding in the circuit court shall pay to the clerk of said court a fee *3 of ten dollars ($10.00) * * * Fees in excess of those herein fixed may be imposed by special or local law, and such excess, together with not more than twenty per centum of the fees herein fixed, shall be expended as provided by any special or local law, now or hereafter in force, in providing and maintaining facilities, including a law library, for the use of the courts of the county wherein the fees are collected."
Pursuant to this enabling legislation, a special act of the Legislature, Chapter 59-1492, Laws of Florida, was passed in 1959, providing for an excess fee of $3.00 for the Lee County Law Library. Under the statutory formula the Law Library received $3.00 plus 20% of $10.00 or a total allocation of $5.00 out of each filing fee paid to the Clerk. The Clerk did not contest the allocation, but funded the Library pursuant to the statutory scheme until 1963, at which time Fla. Stat. § 28.241(1), F.S.A. was amended to increase the base fee from $10.00 to $12.00. Under the amended legislation the allocation to the Law Library increased to $5.40 ($3.00 plus 20% of $12.00). Again, the Clerk did not contest the amendment, but continued to fund the Library until July 1, 1970, at which time the Clerk ceased payments to the Library altogether.
The catalyst which led the Clerk to cease payments to the Library was the passage of Chapter 70-134, Laws of Florida, which, among other things, extensively revised Fla.Stat, § 28.241, F.S.A. In part, the new enabling legislation provided:
"The party instituting any civil action, suit or proceeding in the circuit court shall pay to the clerk of said court a service charge of fifteen dollars ($15) * * *. Service charges in excess of those herein fixed may be imposed by the governing authority of the county by ordinance or by special or local law, and such excess shall be expended as provided by such ordinance or any special or local law, now or hereafter in force, in providing and maintaining facilities, including a law library, for the use of the courts of the county wherein the service charges are collected."
As a result of the cessation of funding to the Library, the Board of Trustees brought the instant declaratory judgment action seeking a determination of the rights of the Library under Chapters 59-1492 and 70-134. By motion for summary judgment, the Clerk alleged that Chapter 59-1492 was unconstitutional because (1) the title of the act did not give fair notice of intent to legislate on the subject of filing fees in civil actions, and (2) the portion of the filing fee payable to the Law Library constituted an unconstitutional tax upon those persons required to bring their causes into court. In the alternative, the Clerk argued that Chapter 70-134, constituted a repealer of Chapter 59-1492. The Board of Trustees of the Law Library responded to these various arguments, and in addition, asserted that the Clerk was estopped from raising the unconstitutionality of Chapter 59-1492, because he had acted under it for some ten years.
The trial judge granted summary judgment in favor of the Board of Trustees of the Law Library, specifically finding that Chapter 59-1492, was a valid exercise of the legislative power which did not violate the provisions of the Florida Constitution specified by the Clerk; that Chapter 70-134 did not constitute a repealer of Chapter 59-1492; and moreover, that the Clerk was estopped by his conduct from raising the constitutionality of Chapter 59-1492. The Clerk thereupon brought a timely appeal here.
Appellant first contends that Chapter 59-1492, was impliedly repealed by passage of Chapter 70-134. Our response to this contention is governed by Chapter 70-134 itself, which, in Section 40, provides:
"The fees herein shall supersede and repeal all laws in conflict herewith except as provided in section 28.241, Florida Statutes."
*4 Fla. Stat. § 28.241, F.S.A. provides that excess service charges for the purpose of maintaining facilities, including a a law library, may be imposed by the "governing authority of the county by ordinance or by special or local law, and such excess shall be expended as provided by such ordinance or any special or local law, now or hereafter in force". (Emphasis supplied) This savings clause appears to be expressly designed to retain special acts such as the one in contention here. Chapter 59-1492 was in force on the effective date of Chapter 70-134, and accordingly, comes within the savings clause in Fla. Stat. § 28.241, F.S.A. We therefore reject the contention of appellant that Chapter 70-134 constituted an implicit repealer of Chapter 59-1492.
Appellant next argues that Chapter 59-1492, violates Fla. Const. Article III, Section 6, F.S.A., in that the title of the act[1] does not give fair notice of intent to legislate on the subject of filing fees in civil actions. We are unable to agree with this contention. Where one general subject (here, the creation and funding of a law library) is expressed in the title of an act, the means and instrumentalities for effecting such subject need not be stated in the title and may be regarded as matters properly connected with the subject which may be properly embraced in the act. City of Hialeah v. State ex rel. Ben Hur Life Ass'n, 128 Fla. 46, 174 So. 843 (1937). Accord, Spencer v. Hunt, 109 Fla. 248, 147 So. 282 (1933); Williams v. Dormany, 99 Fla. 496, 126 So. 117 (1930).
Such a result comports with this Court's consistent refusal to resort to critical construction of the titles of acts to exclude parts of the acts as being in violation of the constitutional requirement that the subject should be briefly expressed in the title. Florida East Coast R. Co. v. Hazel, 43 Fla. 263, 31 So. 272 (1901); Town of Monticello v. Finlayson, 156 Fla. 568, 23 So.2d 843 (1945). The Leiglsature is allowed wide latitude in the enactment of laws, and courts will strike down the title of an act only where the title is plainly violative of the Constitution. King Kole, Inc. v. Bryant, 178 So.2d 2 (Fla. 1965); Wright v. Board of Public Instruction of Sumter County, 48 So.2d 912 (Fla. 1950); State ex rel. Crump v. Sullivan, 99 Fla. 1070, 128 So. 478 (1930); City of Winter Haven v. A.M. Klemm & Son, 132 Fla. 334, 181 So. 153 (1938), rehearing denied, 133 Fla. 525, 182 So. 841; State ex rel. Oglesby v. Hand, 96 Fla. 799, 119 So. 376 (1928); City of Ocoee v. Bowness, 65 So.2d 7 (Fla. 1953); Warren v. Pope, 64 So.2d 564 (Fla. 1953). In fact, the majority of the cases stating this rule have declared that a presumption in favor of validity exists. State ex rel. Flink v. Canova, 94 So.2d 181 (Fla. 1957); A.M. Klemm & Son v. City of Winter Haven, 141 Fla. 60, 192 So. 652 (1939); City of Winter Haven v. A.M. Klemm & Son, supra.
Moreover, it is well to keep in mind in any consideration of the sufficiency of the title of an act that the purpose of the constitutional provision is to prevent deception, surprise or fraud upon the Legislature, and to apprise the people of the subjects of legislation. Coldeway v. Board of Public Instruction of Gulf County, 189 So.2d 878 (Fla. 1966); Knight & Wall Co. v. Bryant, 178 So.2d 5 (Fla. 1965); State ex rel. Grodin v. Barns, 119 Fla. 405, 161 So. 568 (1935). In the instant case this requirement is met. The enabling legislation (Fla. Stat. § 28.241, F.S.A.) setting up the basic filing fee for clerks, specifically *5 contemplated such acts as the one in question here; and indeed, numerous such acts have been passed or amended subsequent to enactment of Fla. Stat. § 28.241, F.S.A. It is also significant that Chapter 70-134 again authorized passage of special acts imposing excess filing fees, making reference to legislation "now or hereafter in force". Plainly, the Legislature was aware of the existence and content of acts such as the disputed provision here, and approved them in its amendatory legislation. It is hardly creditable to suppose that any element of fraud or surprise on either the Legislature or the Clerk was or is inherent in the instant situation.
Next, appellant asserts that the portion of the filing fee payable to the Law Library levies an unconstitutional tax upon those persons required to bring their causes into court. In making this argument, appellant relies solely on this Court's decision in Flood v. State ex rel. Homeland Co., 95 Fla. 1003, 117 So. 385 (1928). The Flood case involved an attack upon a special act applicable to Dade County which imposed a $10.00 docket fee upon plaintiffs in the circuit court and the civil court of record and directed that the funds be used for the establishment and maintenance of a public law library. The act in question differed from the Lee County Act in two significant respects: it provided that the balance of the funds remaining after adequate provision for the law library was to be used "for general county purposes" as directed by the board of county commissioners; and further, no part of the docket fee was appropriated for the payment of any services rendered by the clerk. We concluded that the act was an attempt to "levy a tax on those who must bring their causes into court and to require the payment of such tax for the benefit of the public treasury * * *." The act was held to be repugnant to Fla. Const., Bill of Rights, Section 4 (1885).
We deem it especially significant in Flood, that the balance of the funds remaining after adequate provision for the law library were to be used for "general county purposes" as directed by the board of county commissioners. Since at least part of the fee was available to the county for the building of roads, schools, and so on, it could not be said that the fee levied was a cost of the administration of justice. In the instant case, however, we think such a statement can be made. Although there is some language in Flood which indicates that the Court felt that even a levy specifically for a law library was not a necessary cost of the administration of justice, we conclude that it is in the case sub judice. To the extent that such an inference can be drawn from the language of Flood, we recede from Flood.
Perhaps the study of the law was less complex in 1928, and research needs of judges, courts and litigants could be fulfilled by small privately-owned libraries; such, however, is clearly not the case today. The proliferation of legislation, court decisions, the increase in litigation in general, and the advancement of revolutionary legal theories in recent decades have all combined to make the study of the law an even more specialized and complex calling. Few courts in this state could operate without an adequate law library. More importantly, a public law library is open to and serves the needs of all persons throughout the county, rich and poor alike. For lawyers, it reduces or eliminates the need to acquire and maintain expensive law libraries without jeopardizing the effectiveness of the individual lawyer's research. For litigants and those interested in the law generally it provides a vast amount of material at no expense to the individual. In our opinion, the law library fulfills an important and growing need of practitioners, judges, and litigants. It is essential to the administration of justice today, and it is appropriate that its cost be assessed against those who make use of the court systems of our state. Accordingly, we reject appellant's contention that the assessment is an unconstitutional tax disguised as a court cost.
*6 Inasmuch as we conclude that Chapter 59-1492, is a valid exercise of the legislative power which survived passage of Chapter 70-134, Laws of Florida, it is unnecessary to consider whether the Clerk should be estopped from challenging the act.
Lastly, we must determine the proper amount of the Clerk's fee to be allocated to the Library. Section 4 of Chapter 59-1492, provides in this regard:
"The clerk of the circuit court shall pay from such filing fee the sum of three ($3.00) dollars to the county commissioners for the sole purpose of equipping, maintaining and operating a Law Library in Lee County. In addition the clerk of the circuit court shall pay over to the county commissioners for the sole purpose of equipping, maintaining and operating a Law Library in Lee County an amount which shall be equal to twenty (20%) per cent of the remainder of the filing fee (after first deducting the three ($3.00) dollars heretofore allocated) in any civil actions, suits or proceedings."
Pursuant to the mandate of this special act, the Court below allocated the monies in question as follows: $3.00 plus 20% of $15.00 (the new base fee provided for by Chapter 70-134), or a total of $6.00 to the Library, and $12.00 to the Clerk.
Under the "old" Fla. Stat. § 28.241, F.S.A. (Chapter 57-322) such an allocation would clearly have been proper. However, "new" Fla. Stat. § 28.241, F.S.A. (Chapter 70-134) deleted the provision authorizing the library to receive 20% of the "fees herein fixed", in addition to the excess fee imposed by special act. Under the new enabling legislation only an excess fee is provided for. On its face, therefore, Chapter 70-134 prohibits the Clerk from allocating any portion of his base charge of $15.00 to the Law Library. This leaves a total of $3.00 available for allocation to the Library.
Appellant argues, however, that the following language in Chapter 70-134 (Fla. Stat. § 28.241(1), F.S.A.) requires a different result:
"That part of the within fixed or allowable service charges which is not by local or special law applied to the special purposes shall constitute the total service charges of the clerk of said court for all services performed by him in civil actions, suits or proceedings."
It is contended by the Library that this language permits an invasion of the Clerk's fee for the purpose of maintaining the Library to the extent provided in the special act, that is, to the extent of 20% of the Clerk's base fee. We disagree. It is unclear from the act what this language was or is intended to cover, but it can be said with certainty that it was not intended to apply to law libraries, inasmuch as law libraries are covered by that part of the act requiring funding by an excess fee. The portion of the act relating to excess fees for libraries is specific and makes no provision for invasion of the Clerk's basic fee. Presumably, the Clerk's fee may be invaded for an unspecified purpose, but not for a specifically excluded purpose. Therefore, we conclude that the proper allocation of the total fee should be as follows: $15.00 to the Clerk; $3.00 to the Law Library; and $3.00 to the Legal Aid Society (this portion of the fee is not contested in this suit), for a total fee of $21.00.
Accordingly, the judgment appealed from is affirmed in part and reversed in part.
ROBERTS, C.J., and ERVIN, CARLTON, BOYD and DEKLE, JJ., concur.
NOTES
[1] "AN ACT providing for the establishment and maintenance of a county law library in the county courthouse of Lee County; providing for creation of law library fund; providing for a board of trustees to make rules and regulations governing said library, providing for method of appointment and term of said trustees; providing for method of maintenance and administration; declaring law library to be a county purpose; authorizing board of county commissioners to make annual appropriations to library fund; repealing Chapter 31445, Acts of 1955-6; providing an effective date."